CELERY JOHNSON v. THE STATE.

No. 18653. Delivered December 23, 1936.

The opinion states the case.

*Renfro Speed* and *Harvey Vibrock,* both of Teague, for appellant.

**436**

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for twenty-five years.

The parties involved are negroes. The appellant is charged with having killed his wife, Azalee Johnson, by hitting her in the head with a hammer. The appellant and deceased were not living together, but she lived with her mother and grandmother together with her two small children. The appellant would visit his wife and remain with her as long as two weeks at a time. The State's witnesses testified that at the time of the tragedy, the appellant began running after the deceased; that she ran through the house and out on the front porch; that she picked up a hammer and drew it back as if to strike the appellant; that appellant took the hammer from the deceased and hit her over the head with it some two or three times as a result of which she died some five days later.

It appears that on Sunday previous to the tragedy on the following day, appellant had a difficulty with the deceased during which he chased her with a knife in his hand. He finally agreed that if she would stop and talk to him, he would give her the knife. This he did in the presence of witnesses.

The grandmother of the deceased testified that on the morning of the homicide, the appellant asked the deceased for the knife which he had given her on the preceding day; that some words passed between them which the witness did not understand. The witness saw the deceased run out of the house and the appellant followed her. When the witness went to the door and looked out she saw the deceased lying on the ground right in front of the porch.

Tyree Jones, a youth seventeen years of age, testified that he was present on the morning when the tragedy occurred. Appellant asked deceased to give him a knife which she did. He then asked deceased to come out as he wanted to talk to her. She said: "I ain't going" and appellant replied: "I am going to talk to you." Deceased went first to her grandmother and then called to her mother. Appellant made a run at deceased and she picked up a hammer. Appellant pulled the hammer out of the hand of deceased and hit her with it. He hit the deceased twice with the hammer, and as she fell down he walked up and hit her again. He then threw the hammer down and went on up the road.

Appellant testified that on the morning of the tragedy, he, together with the deceased and their two children, went to pick

some grapes; that upon their return he went to a spring about half a mile from the house to get a bucket of water. Upon his return to the house he found the deceased and Tyree Jones in bed in a compromising position. Deceased and Jones ran out on the porch followed by the appellant. As deceased went through the room and out on the porch she grabbed a hammer and drew it back as though she were to hit the appellant. As the deceased drew back the hammer the appellant caught it, took it away from her, pulled her off the porch and hit her with it. Appellant claims that during the scuffle with the deceased she cut him with a pocket knife. On cross-examination the appellant testified:

"I killed her because I knew she was going to hit me with that hammer and kill me if I didn't."

Dr. J. D. Davidson, a practicing physician and surgeon who maintained a hospital in Teague, testified that he examined the deceased when she was brought to the hospital. He found that deceased had a pretty bad skull fracture just above and behind the right ear. The skull was caved in about an inch. He removed the loose bone from the cavity and part of her brain protruded therefrom. The deceased lived some four or five days after having been brought to the hospital. The doctor said her death was due to the fracture of her skull.

Bill of Exception No. 1 complains of the testimony of Johnie Jones to the effect that on Sunday before the homicide on Monday the appellant asked the deceased to accompany him to the house of her brother; that after they had gone about one hundred yards she heard the deceased holler. Upon looking up the witness saw appellant chasing the deceased down the road with a white-handle pocket knife. Appellant claims that this was evidence of a different transaction from that resulting in the death of the deceased.

Bill No. 2 complains of the testimony of the witness Odell Jones who testified in substance to the same facts as those set out in Bill No. 1. It is claimed that there was no verbal testimony showing the animus of the appellant towards the deceased to have existed from the occurrence on Sunday until the time of the tragedy on the following day. It is the contention of the State that the acts of the appellant on the day preceding the homicide were admissible for the purpose of showing motive and intent, with which contention we are in accord.

Bill of Exception No. 3 complains of the opening argument of counsel for the State wherein he made the following statement to the jury:

"The defendant here had a wife and two small children and the record does not show that he contributed anything to their support for several months before his wife's death."

There was no specific evidence of the appellant's failure to support his wife and children. The uncontradicted evidence detailing the incidents of the tragedy is deemed such as to disclose that the remark of State's counsel quoted above was not such as to demand a reversal of the conviction. The remark stated the truth, namely, that there was no evidence that the appellant had given support to his family. His failure to do so was not a relevant subject of comment by counsel for the State, but, as stated above, viewing the record in its entirety, there is no such vice in the remark as to justify a reversal of the judgment of conviction. An affirmance is therefore ordered.

*Affirmed.*